IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CHARLES S. DOWELL                    )
                                     )
        Plaintiff,                   )
                                     )
            vs.                      )    Civil Action No. 06-261
                                     )
MICHAEL J. ASTRUE,                   )
Commissioner of Social Security,     )
                                     )
        Defendant.                   )

### MEMORANDUM OPINION

**I.    INTRODUCTION**

        Pending before the Court are cross-motions for summary judgment filed by Plaintiff Charles S. Dowell and Defendant Michael J. Astrue, Commissioner of Social Security.  Plaintiff seeks review of a final decision by the Commissioner denying his claim for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*  For the reasons discussed below, Defendant's motion is denied, Plaintiff's motion is granted, and the matter is remanded for further consideration in light of the analysis which follows.

**II.  BACKGROUND**

        A.    Factual Background

            Charles Dowell worked for almost 20 years as a semi-skilled laborer with Zippo Manufacturing Company ("Zippo") in Bradford, Pennsylvania.  (Transcript of Proceedings, Docket No. 6, "Tr.," 70.) On July 25, 1983, he injured his back while moving an

oil tank at work, but returned to his same job sometime thereafter. In May 1989, Plaintiff's orthopedist, Dr. John J. Euliano, Jr., determined that he had a chronic disc herniation at L4-L5 in his lumbar spine with borderline stenosis of the spinal canal,[1] but concluded no surgery was necessary as long as Mr. Dowell limited his lifting.  (Tr. 181.)

Within two years, Mr. Dowell's back condition had deteriorated, and on January 8, 1991, Dr. Euliano reported to Zippo that Plaintiff was totally disabled from all work from January 2, 1991, at least until a follow-up exam scheduled for two weeks later.  (Tr. 179.)  On March 22, 1991, Mr. Dowell underwent an MRI of his lumbar spine which showed disc degeneration at L4-5 and L5-S1, a bulging annulus at L4-5 with probable focal protrusion to the right at L4-L5, and mild diffuse bulging at the L5-S1 disc.  (Tr. 177.)  On April 23, 1991, Dr. Euliano advised Plaintiff's employer that he was precluded from any work involving lifting or carrying more than ten pounds, bending, climbing, twisting or prolonged sitting.  (Tr. 176.)  Mr. Dowell was apparently awarded workers compensation benefits at approximately that time.

---

[1] Spinal stenosis is a narrowing of the lumbar (back) or cervical (neck) spinal canal, which causes compression of the nerve roots.  It may be caused by osteoarthritis or by an injury that causes pressure on the nerve roots or the spinal cord itself.  Symptoms include pain or numbness in the buttocks, thighs, or calves which is worse with standing, walking or exercise; back pain radiating to the legs; weakness or pain in the legs; and difficulty or imbalance when walking.  See medical encyclopedia at the National Institute of Medicine's on-line website at www.nlm.nih.gov/medlineplus (last visited September 7, 2007).

In late 1991, Zippo made two offers for Mr. Dowell to return to work as of January 1992, one position in the gift-box department and another attaching emblems to the company's products. (Tr. 184-188.) Dr. Robert L. Perneski, a physician hired by Zippo's workers compensation insurance company, concluded that Mr. Dowell could do either job, assuming the weight to be lifted was not more than five pounds and that Plaintiff had "some option to sit or stand as necessary." (Tr. 184.) Plaintiff refused to accept either position, apparently as a combination of his reluctance to drive 60 miles to and from work, fearing he would endanger himself and/or others, and his reluctance to take a substantial pay cut and "demotion." (Tr. 182-183.)

A workers compensation judge granted Zippo's petition to suspend benefits, a decision which was ultimately affirmed by the workers compensation appeal board on December 20, 1999. (Tr. 54-61.)

B.   Procedural Background

At some unspecified date, Mr. Dowell filed an application for Social Security disability insurance benefits, which was denied on June 14, 1991. (Tr. 82.) In a letter sent to the Social Security Administration ("SSA") on approximately June 21, 2004, Plaintiff stated that he also applied for benefits in 1996, but there appears to be no evidence of such an application in the record. (Tr. 32.) On February 24, 2004, he filed yet another

3

application, claiming he had become disabled on June 21, 1991, due to a combination of his back disorder, kidney stones, and cardiac problems.   (Tr. 49-51, 69.)   His February 2004 application was denied on April 28, 2004, when the Social Security Administration determined that the medical evidence prior to December 31, 1996, was insufficient to establish that his back disorder was disabling and that there was no medical evidence of his heart problems prior to 1997 nor of his kidney problems until 2000.   (Tr. 25-29.)

Acting *pro se*, Mr. Dowell timely filed a request for a hearing before an administrative law judge ("ALJ.")   (Tr. 30-33.)   However, Plaintiff waived his right to such a hearing on July 20, 2004, stating that he was "unable to attend because of health reasons." (Tr. 48.)

Judge Bruce R. Mazzarella was assigned to the case, and on May 31, 2006, issued a decision in which he found that Plaintiff was not disabled at any time prior to his date last insured, December 31, 1996.   (Tr. 13-26.)   This decision was affirmed by the Appeals Council on September 6, 2006. (Tr. 5-7.)   Therefore, the May 31, 2006, opinion of the ALJ became the final decision of the Commissioner for purposes of review.    42 U.S.C. §  405(h); Rutherford v. Barnhart, 399 F.3d 546, 549-550 (3d Cir. 2005), *citing* Sims v. Apfel, 530 U.S. 103, 107 (2000).   Plaintiff, now represented by counsel, filed suit in this Court on November 7, 2006, seeking judicial review of the ALJ's decision.

4

C.   Jurisdiction

This Court has jurisdiction by virtue of 42 U.S.C. § 1383(c)(3) (incorporating 42 U.S.C. § 405(g)) which provides that an individual may obtain judicial review of any final decision of the Commissioner by bringing a civil action in the district court of the United States for the judicial district in which the plaintiff resides.

## III. STANDARD OF REVIEW

The scope of review by this Court is limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact.  42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389 (1971); Schaudeck v. Comm'r of Soc. Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999).  Findings of fact by the Commissioner are considered conclusive if they are supported by "substantial evidence," a standard which has been described as requiring more than a "mere scintilla" of evidence, that is, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson, id. at 401.  "A single piece of evidence will not satisfy the substantiality test if the [ALJ] ignores, or fails to resolve, a conflict created by countervailing evidence."  Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983).

This Court does not undertake de novo review of the decision

5

and does not re-weigh the evidence presented to the Commissioner. Schoengarth v. Barnhart, 416 F. Supp.2d 260, 265 (D. Del. 2006), citing Monsour Medical Center v. Heckler, 806 F.2d 1185, 1190 (3d Cir. 1986) (the substantial evidence standard is deferential, including deference to inferences drawn from the facts if they, in turn, are supported by substantial evidence.) If the decision is supported by substantial evidence, the Court must affirm the decision, even if the record contains evidence which would support a contrary conclusion. Panetis v. Barnhart, CA No. 03-3416, 2004 U.S. App. LEXIS 8159, *3 (3d Cir. Apr. 26, 2004), citing Simmonds v. Heckler, 807 F.2d 54, 58 (3rd Cir. 1986), and Sykes v. Apfel, 228 F.3d 259, 262 (3rd Cir. 2000).

## IV. **LEGAL ANALYSIS**

### A.   The ALJ's Determination

In determining whether a claimant is eligible for Social Security disability benefits, the burden is on the claimant to show that he has a medically determinable physical or mental impairment (or combination of such impairments) which is so severe he is unable to pursue substantial gainful employment[2] currently existing in the national economy. The impairment must be one which is expected to result in death or to have lasted or be expected to

---

[2] According to 20 C.F.R. § 416.972, substantial employment is defined as "work activity that involves doing significant physical or mental activities. . . . Work may be substantial even if it is done on a part-time basis." "Gainful work activity" is the kind of work activity usually done for pay or profit.

6

last for not less than twelve months. 42 U.S.C. § 1382c(a)(3)(C)(i); Morales v. Apfel, 225 F.3d 310, 315-316 (3d Cir. 2000).

To be granted a period of disability and receive disability insurance benefits, a claimant must show that he contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he was last insured. 42 U.S.C. § 423(a); 20 C.F.R. § 404.131(a). The Commissioner does not dispute that Mr. Dowell satisfied the first two non-medical requirements, and the parties agree that Plaintiff's date last insured was December 31, 1996. Therefore, in order to receive DIB, Mr. Dowell must show that he became disabled prior to that date.

To determine a claimant's rights to DIB,[3] the ALJ conducts a formal five-step evaluation:

(1) if the claimant is working or doing substantial gainful activity, he cannot be considered disabled;

(2) if the claimant does not suffer from a severe impairment or combination of impairments that significantly limits his ability to do basic work activity, he is not disabled;

(3) if the claimant does suffer from a severe impairment which meets or equals criteria for an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") and the condition has lasted or is expected to last continually for at least twelve months, the claimant is considered disabled;

_____

[3] The same test is applied whether the claimant is seeking DIB or Supplemental Security Income benefits. Burns v. Barnhart, 312 F.3d 113, 119, n1 (3d Cir. 2002). Therefore, courts routinely consider case law developed under both types of claims.

7

(4)   if the claimant retains sufficient residual functional capacity[4] ("RFC") to perform his past relevant work, he is not disabled; and

(5)   if, taking into account the claimant's RFC, age, education, and past work experience, the claimant can perform other work that exists in the local, regional or national economy, he is not disabled.

20 C.F.R. § 416.920(a)(4); *see also* Morales, 225 F.3d at 316.

In steps one through four, the burden is on the claimant to present evidence to support his position that he is entitled to Social Security benefits, while in the fifth step the burden shifts to the Commissioner to show that the claimant is capable of performing work which is available in the national economy. Gorecki v. Massanari, 197 F. Supp.2d 154, 159 (M.D. Pa. 2001), *citing* Fargnoli v. Massanari, 247 F.3d 34, 39 (3d Cir. 2001).

Following the prescribed analysis, Judge Mazzarella first concluded that Mr. Dowell had not engaged in substantial gainful activity since 1991, based on the fact that his earnings record showed no wages or self-employment income after that date.   (Tr. 18, *citing* Tr.62-67.)  At step two, he found that during the period in question, Plaintiff suffered from a back disorder, but that his impairments stemming from kidney stones, cardiac problems, hypertension, history of skin cancer, neck pain, and high

---

[4]   Briefly stated, residual functional capacity, or RFC, is what a claimant can do despite his recognized limitations.  Social Security Ruling 96-9 defines RFC as "the individual's maximum remaining ability to perform work on a regular and continuing basis, i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule."  *See also* 20 C.F.R. § 416.945.

8

cholesterol arose only after his date last insured. (Tr. 18-19.) Although Mr. Dowell had also alleged that he suffered from "memory loss" in 1991, the ALJ concluded that (1) there was no medical evidence indicating he had ever received psychiatric treatment, counseling or medication for such a condition; (2) no physician treating him for other conditions had mentioned memory loss in his notes; and (3) Plaintiff himself had mentioned such an impairment only one time, in his application for benefits.[5]  (Tr. 18, *citing* Tr. 93.) Based on this reasoning, the ALJ limited the remainder of his analysis to the effects of Mr. Dowell's back disorder.

At step three, the ALJ concluded that when he compared the medical evidence to Listing 1.04, disorders of the spine, the severity of Mr. Dowell's back disorder did not meet or equal that Listing or any other relevant Listing.  (Tr. 19.)

At step four, having considered the entire record, the ALJ found that as of Plaintiff's alleged onset date of June 21, 1991, Mr. Dowell had the residual functional capacity to perform sedentary work and that by his date last insured, his condition had improved sufficiently that he could perform light work. (Tr. 19.)

---

[5] The evidence before the Appeals Council includes a letter from Plaintiff (Tr. 10) referring "memory loss, mood swings, and irritability" resulting from a head injury suffered during a motor vehicle accident on January 2 or 3, 1992.  Memory loss is also mentioned in a letter dated January 28, 1992, from Dr. John A. Flamini, a neurologist who examined Mr. Dowell at that time.  (Tr. 405-406.)  Again, Dr. Flamini's letter was not before the ALJ, but only the Appeals Council, which determined that consideration by the ALJ would not have changed the outcome of his decision.  (Tr. 5-8.)

In particular, the ALJ based this conclusion on the fact that between April 23, 1991, and September 17, 1998, Plaintiff "basically disappeared from treatment for his back," a lack of follow-up which the ALJ found "inconsistent with any severe level of disability." (Tr. 21.)  Furthermore, both Dr. Euliano and Dr. Perneski had opined in connection with the hearing before the workers compensation judge that Mr. Dowell could perform either of the two positions offered to him in late 1991.  (Tr. 21; *see also* Tr. 58-59.)

At step four, the ALJ found that as of December 31, 1996, Plaintiff was unable to return to his past work as a furnace technician/laborer where he was required to lift up to 100 pounds and walk four hours during the course of an eight-hour workday. (Tr. 21.)  Based on Plaintiff's birth date of April 13, 1942, the ALJ determined that according to SSA regulations, Mr. Dowell was considered a "younger individual" on his alleged onset date and an individual "closely approaching advanced age" on his date last insured.  When combined with his high school education, an ability to communicate in English, the lack of transferrable skills from his prior work to any other semi-skilled work, the medical evidence of record, and the absence of any non-exertional limitations,[6] the

_____

[6] Exertional limitations are physical limitations, e.g., pain, which affect a claimant's ability to meet the strength demands of a job such as sitting, standing, walking, lifting, etc.  20 C.F.R. § 404.1569a(a). Nonexertional limitations are limitations imposed by impairments affecting one's ability to meet non-strength requirements,

10

ALJ concluded that at all times prior to his date last insured, Mr. Dowell was able to perform unskilled work at the sedentary and light levels and could adjust to work that exists in significant numbers in the national economy. (Tr. 22.) Consequently, he was not under a disability at any time through his date last insured and was not entitled to benefits. (Tr. 22-23.)

B.    Plaintiff's Arguments

On appeal, Mr. Dowell raises only one major argument alleging error by the ALJ. That is, Plaintiff argues that Judge Mazzarella erred by mechanically applying the Social Security Administration's Medical-Vocational Guidelines, known informally as the "grids," in determining that Plaintiff was not entitled to benefits. (Plaintiff's Brief in Support of Motion for Summary Judgment, Docket No. 10, "Plf.'s Brief.") On his date last insured, Plaintiff was 103 days shy of his fifty-fifth birthday when he would have been considered of "advanced age." Had the ALJ taken this fact into consideration, his limitation to light or sedentary work, together with his other characteristics (e.g., education, lack of transferrable skills, ability to communicate in English), would have made him eligible for benefits. According to Plaintiff, the ALJ's failure to consider this aspect of the case flies in the face of the SSA's regulations and the law of this Circuit,

---

for example, nervousness, anxiety, depression, and difficulty concentrating or understanding detailed instructions.   20 C.F.R. § 404.1569a(c).

11

particularly the decision by the Court of Appeals in <u>Lucas v.</u> <u>Barnhart</u>, No. 05-3973, 2006 U.S. App. LEXIS 14487 (3d Cir. June 12, 2006). (Plf.'s Brief at 7-15.)

Turning first to the regulations cited by Plaintiff, the grids to which Mr. Dowell refers appear in 20 C.F.R. Part 404, Subpart P, Appendix 2. The grids provide a set of rules for determining disability based on a claimant's chronological age, education (including illiteracy and the ability to communicate in English), and the complexity of previous work experience (including the acquisition of skills which are considered transferable to new types of work), set out in a matrix based on each level of residual functional capacity determined by the SSA, i.e., sedentary, light, and medium.[7] "Where a claimant's qualifications correspond to the job requirements identified by a rule, the grids direct a conclusion that work exists that the claimant can perform." <u>Sykes</u>, 228 F.3d 262.

Social Security regulations assume, all other things being

---

[7] The requirements of "sedentary" and "light" work are discussed in detail in the text above. An individual capable of performing medium-level work can lift up to 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds, and has the ability to stand and/or walk six hours in an eight-hour workday. 20 C.F.R. § 404.1567(b). As the regulations explain, if an individual of any age has the RFC to perform heavy work (lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds) or very heavy work (lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more), he or she will be presumed not to have a severe impairment or presumed to be able to do past work, either of which leads to the conclusion that the claimant is not disabled. *See* 20 C.F.R. § 404.1567(d) and (e); Medical-Vocational Rule 204.00.

equal, that a person's age is "an increasingly limiting factor" in
his ability to adjust to a new type of work, even if that work is
less physically strenuous or requires fewer skills than his
previous work.   20 C.F.R. § 404.1563(a).   Therefore, the grids
describe a claimant in one of three categories based on age:

age 55 and over    an individual "of advanced age,"

age 50 through 54   an individual "approaching advanced age,"

age 18 through 49   a "younger" individual.[8]

20 C.F.R. § 404.1563(c)-(e).

These supposed bright-line distinctions based on the
claimant's age are modified by a regulation designed to address
"borderline" situations.   That is, where a claimant is

> within a few days to a few months of reaching an older
> age category, and using the older age category would
> result in a determination or decision that [he is]
> disabled, [the SSA] will consider whether to use the
> older age category after evaluating the overall impact of
> all the factors of [the] case.

20 C.F.R. § 404.1563(b); see also Lucas, 2006 U.S. App. LEXIS at
*6.

"Where the guidelines do not describe a claimant's disability
accurately or where there is a borderline situation, the guidelines
are not to be applied 'mechanically.'"   Mason v. Shalala, 994 F.2d

---

[8]   Within this category, the SSA has recognized that individuals
between 45 and 49 who "(i) Are restricted to sedentary work; (ii) Are
unskilled or have no transferable skills; (iii) Have no past relevant
work or can no longer perform past relevant work, and (iv) Are unable
to communicate in English, or are able to speak and understand English
but are unable to read or write in English" (emphasis added), should
be considered disabled as a result of the combination of these four
characteristics.   Medical-Vocational Rule 200.00(h)(1).

1058, 1064, n.9 (3d Cir. 1993). As the Court of Appeals has noted, although "[t]here is an assumption inherent in the grids that persons within those categories have certain capabilities, . . . in a 'borderline situation' this assumption becomes unreliable and a more individualized determination is necessary." Kane v. Heckler, 776 F.2d 1130, 1133 (3d Cir. 1985). Thus, the ALJ is required to make two factual findings. First, he must determine whether the period between one age category and another satisfies the language of 20 C.F.R. § 404.1563(b), i.e., is the claimant "within a few days to a few months of reaching an older age category." While the Circuits differ on what period of time creates a borderline situation, the Third Circuit Court of Appeals has noted that there is no authority which extends consideration of the question to persons "within five (5) to six (6) months" of achieving the next category. Roberts v. Barnhart, No. 04-3647, 2005 U.S. App. LEXIS 14408, *4 (3d Cir. July 15, 2005). On the other hand, the plaintiff in Lucas was 106 days short of his 55th birthday when his date last insured occurred, a period which the Court did not question triggered a borderline situation. Lucas, 2006 U.S. App. LEXIS at *8.

Assuming the first question is answered affirmatively, the ALJ must then determine whether the claimant's ability to adjust to new work on the relevant date was more like that of an individual in the younger or in the older age category. Lucas, id. at *10,

*citing* Kane, 776 F.2d at 1134, and Daniels v. Apfel, 154 F.3d 1129,
1136 (10th Cir. 1998) ("The Commissioner must determine based on
whatever evidence is available which of the categories on either
side of the borderline best describes the claimant and the
Commissioner may apply that category in using the grids.")

According to Defendant, the SSA's internal policy manual, the
Hearings, Appeals and Litigation Law Manual ("HALLEX")[9] requires
the ALJ to apply a "sliding scale" approach in the second step of
his analysis of borderline situations. (Defendant's Brief in
Support of His Motion for Summary Judgment, Docket No. 15, at 8,
"Def.'s Brief.") The HALLEX provides that in resolving borderline
situations, "the claimant must show progressively more additional
vocational adversity(ies) — to support use of the higher age — as
the time period between the claimant's actual age and his or her
attainment of the next higher age category lengthens." *See* the on-
line version of HALLEX, www.socialsecurity.gov/OP_Home/hallex,
Section II-5-3-2 (last visited September 7, 2007.) Examples of
"vocational adversities" are such things as "additional
impairment(s) which infringes upon — without substantially
narrowing — a claimant's remaining occupational base," marginal

---

[9] As this Court has previously noted, the Court of Appeals for
the Third Circuit has yet to resolve the question of whether an ALJ's
failure to follow HALLEX is, in itself, reversible error and the other
federal appeals courts are split on this issue. District courts of
this Circuit have, however, referred to the manual in numerous
opinions. *See* Lang v. Barnhart, CA No. 05-1497, 2006 U.S. Dist. LEXIS
95767, *13 (W.D. Pa. Dec. 6, 2006), and cases cited in notes 11, 12,
and 13 therein.

literacy or ability to communicate in English, work experience only in unskilled job(s) in an "isolated industry or work setting" such as fishing or forestry, or "other adverse circumstances" determined on an individual basis.  Id.

In this case, the ALJ found that after careful consideration of the entire record,

> . . . as of his alleged onset date (June 21, 1991), the claimant had the residual functional capacity to perform sedentary work.  By his date last insured (December 31, 1996), the claimant's condition improved and he had the residual functional capacity to perform light[10] work.

(Tr. 19.)

The ALJ does not cite the substantial evidence on which he bases his conclusion that as of December 31, 1996, Mr. Dowell's condition had improved to the point he could perform light work and the Court's review of the record fails to disclose any medical opinion or other evidence which would support this conclusion.

---

[10] The term "sedentary" describes work which requires lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers and small tools.  Jobs are sedentary even if walking and standing are required occasionally and other sedentary criteria are met.  20 C.F.R. § 404.1567.  A sedentary job should require no more than approximately 2 hours of standing or walking per eight-hour work day, and sitting should typically amount to six hours per eight-hour work day.  Social Security Ruling 83-10. "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities."  20 C.F.R. § 404.1567(b).

16

The descriptions of the two jobs offered to Plaintiff in December 1991 are not determinative of the level of work he could perform in December 1996. That is, although Zippo described these jobs as "light," the fact that they were limited to lifting no more than 5 pounds puts them in the SSA category of sedentary work. *See* 20 C.F.R. § 404.1567, setting the upper weight limit for sedentary jobs at 10 pounds. Moreover, other elements of jobs which are considered "light" by the SSA, e.g., the time spent walking and standing versus sitting, are missing from the descriptions. Thus, although Drs. Euliano and Perneski stated that he could perform either of these jobs, and a Zippo employee charged with responsibility for finding him a job to which he could return had testified that the gift box job remained available as of November 1997 (Tr. 58-59), the job descriptions do not provide substantial evidence that Mr. Dowell could perform light work as that term is defined by the SSA.

In most instances, the Court could overlook the ALJ's omission of his reasoning as to why he concluded Mr. Dowell could perform light work because a claimant who can do light work is also assumed to be able to do sedentary work unless there are limiting factors such as loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. §§ 404.1567(b). Here, however, we cannot find that the error is harmless. If the ALJ erred in concluding that Mr. Dowell could perform light work as of his date

17

last insured (i.e., he could perform only sedentary work), application of the grids leads to the conclusion that he was presumptively disabled.   That is, at age 54 and 8 months on December 31, 1996, Rule 201.14 establishes that someone who (1) can perform the full range of sedentary work, (2) has a high school education but no education providing direct entry into skilled work,[11] and (3) has a past history of semi-skilled work but no transferable skills, is considered disabled. If, conversely, the ALJ correctly found that as of his date last insured Mr. Dowell could perform a full range of light work, application of Rule 202.14 would normally lead to the conclusion he was not disabled.[12] However, as Mr. Dowell points out, the ALJ did not discuss borderline cases, did not recognize that Plaintiff was within 103 days of entering the "advanced age" category, and did not discuss any of the vocational adversity factors. (Plf.'s Brief at 14.)

Defendant argues that the ALJ was "fully aware of Plaintiff's age as of the date last insured, . . . considered the situation and obviously found no 'vocational adversities' that would cause him to use the older age category in applying the Grids."   (Def.'s Brief

[11]   For claimants in the 50-54 year old range, an exception is made for those who have recently completed education which would provide direct entry into skilled sedentary work, leading to the conclusion that they are not disabled. Medical-Vocational Rules 201.00(g) and 201.16.

[12]   The ALJ also cited Rule 202.13 which refers to individuals whose prior work was at the unskilled level. (Tr. 22.)   The Court cannot determine why the ALJ considered this rule inasmuch as he previously concluded Mr. Dowell's prior work was semi-skilled.   (Id.)

18

at 7.)   This argument is unpersuasive and contradictory to the established law of this Circuit that a reviewing court may only consider what is plain on the face of the ALJ's decision and may not "read into" it reasoning or conclusions which are not clearly stated.   *See* SEC v. Chenery Corp., 318 U.S. 80, 87 (1943) and numerous Social Security cases citing Chenery, e.g., Fargnoli, 247 F.3d at 43-44 and n.7, concluding that the district court had erred when it recognized the ALJ's failure to consider all relevant and probative evidence and attempted to rectify this error through its own analysis, thereby violating the Chenery requirement that "the grounds upon which an administrative order must be judged are those upon which the record disclosed that its action was based;"[13] *see also* Phim Khon v. Barnhart, CA No. 03-5122, 2004 U.S. Dist. LEXIS 17781, *14 (E.D. Pa. Sept. 3, 2004) ("[t]he orderly functioning of the process of review requires that the grounds upon which the administrative agency acted be clearly disclosed and adequately sustained," *quoting* Chenery, id. at 94); Cefalu v. Barnhart, 387 F. Supp.2d 486, 491 (W.D. Pa. 2005) ("the district court considers and reviews only those findings upon which the ALJ based the decision, and cannot rectify errors, omissions or gaps therein by supplying

---

[13]   See also Pinto v. Massanari, 249 F.3d 840, 847-848 (9th Cir. 2001); Haga v. Astrue, 482 F.3d 1205, 1207-1208 (10th Cir. 2007); Barbera v. Barnhart, No. 04-4885, 2005 U.S. App. LEXIS 21757, *4-*5 (2d Cir. Oct. 4, 2005); and Butler v. Barnhart, 353 F.3d 992, 1002 (D.C. Cir. 2004), all applying the same principles from Chenery as in Fargnoli.

19

additional findings from its own independent analysis of portions of the record which were not mentioned or discussed by the ALJ"); Telesha v. Barnhart, CA No. 01-2371, 2003 U.S. Dist. LEXIS 16359, *10 (M.D. Pa. Mar. 31, 2003) ("the obligation to consider all probative evidence cannot be met either by a defendant's responsive filing or a reviewing court"); and Coulbourne v. Barnhart, CA No. 00-370, 2002 U.S. Dist. LEXIS 27029, *8 (D. Del. July 15, 2002) (if the grounds invoked by the agency for its decision "are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis," *quoting* SEC v. Chenery Corp., 332 U.S. 194, 196 (1947).)

Furthermore, the complete lack of reference to or analysis pursuant to 20 C.F.R. § 404.1563(b) undercuts Defendant's argument that the ALJ was "fully aware" of his obligations when faced with a borderline situation and that he "obviously" considered other vocational adversities in concluding he should not apply the older age category. An ALJ who "fully" and "obviously" considers the relevant law would normally be expected to explain his reasoning on the issues. Instead, as the reviewing Court, we are confronted with one of those ambiguous situations in which it is unclear if the ALJ failed to consider this matter at all or simply failed to explain his reasoning in the decision. *See* Burnett v. Commissioner of SSA, 220 F.3d 112, 119-120 (3d Cir. 2000) (where ALJ fails to

20

set forth his reasoning or does so only in a conclusory fashion,
the decision is "beyond meaningful judicial review.")  Because his
opinion contains no factual findings relevant to the § 404.1563(b)
inquiry, pursuant to Lucas, this Court must conclude his decision
is unsupported by substantial evidence.    Lucas, 2006 U.S. App.
LEXIS 14487, *11.

The Court is fully cognizant of the fact that few medical
records are provided for the period prior to December 31, 1996, and
that the claimant has the burden to provide such evidence.[14]  Had
the ALJ simply found, as did the SSA in its initial determination
denying benefits, that there was insufficient medical evidence to
conclude that Mr. Dowell was disabled at any time prior to his date
last insured, this Court would be compelled to concur in his
determination.   However, the ALJ's explicit determination - which
appears not to be based on substantial evidence - that Plaintiff

---

[14]  On this subject, the Court notes that Plaintiff was acting *pro
se*; consequently, the ALJ was required to assume a more active role in
helping him develop a "full and fair" administrative record.   Reefer
v. Barnhart, 326 F.3d 376, 380 (3d Cir. 2003).  We further note that
although the SSA made considerable efforts to contact all medical
providers who were identified by Plaintiff (*see* letters and
questionnaires at Tr. 100-174,), two physicians, Dr. Watkins and Dr.
Yohe, were apparently not contacted.  (Tr. 98.)  It is not outside the
realm of possibility that they were the physicians who treated
Plaintiff between April 1991 and September 1998 when, in the ALJ's
opinion, Plaintiff "basically disappeared from treatment for his
back."  Moreover, there is nothing in the record to indicate that Mr.
Dowell himself was ever informed that the critical period for which he
needed to provide medical evidence was prior to his date last insured.
In light of his *pro se* status and the length of time between his date
last insured and the collection of medical records in March 2006, we
believe the ALJ should have made a greater effort to at least alert
Plaintiff that his decision would rest on the determination of his
medical condition prior to December 31, 1996.

could perform at the light exertional level as of his date last insured and the lack of stated reasoning about the borderline situation which existed as of that date require that this case be remanded for further explication or reconsideration.

An appropriate order follows.

September ___/3___, 2007

William L. Standish
United States District Judge

cc:   Counsel of Record

22